### WILLIAM JACKSON v. THE STATE.

No. 3020.    Decided June 7, 1905.

**1.—Assault with Intent to Murder—Charge in Felony .Case—Aggravated Assault—Plea of Guilty.**

Where on a trial for assault to murder the evidence showed that the defendant was shoved or put off the train by the conductor: that defendant had paid his fare, and that he accidentally dropped his pistol which went off, for which the conductor put him off the train, after which the defendant fired at the train at a distance of some hundred and fifty or two hundred feet, and that in the event he had killed the conductor he would have been entitled to a charge on manslaughter; and not having killed the conductor, to a charge on aggravated assault, it was error not to so charge the jury; and this, notwithstanding defendant's plea of guilty, as the court's charge should have submitted every phase of the case presented by the evidence.

**2.—Same—Employment of Attorney—Right to Present Defense—Motion for New .Trial.**

Where on a trial for assault to murder, the motion for new trial, supported by affidavits, showed that defendant believed that he had employed an attorney to represent him in the district court; that he had given said attorney the names of his witnesses to be summoned, and that defendant for the first time, after being brought from jail into court was informed by the court that said attorney would not represent him, that his witnesses were not present and were not summoned, and that he must go to trial; and that defendant being ignorant of his rights pleaded guilty to the indictment, although as shown by said affidavits he had a good defense, it was error not to have granted a new trial.

**3.—Same—Means Used Impossible to Have Committed Assault to Murder.**

Where a motion for new trial, after a conviction for assault to murder, showed by the accompanying affidavits that the shots fired by the defendant were parallel with the train upon which prosecutor was conductor, at a distance

of from one hundred and fifty to two hundred feet, with a pistol, and that it was impossible for defendant to have made an assault on the prosecutor or reached him by the means used, it was error not to have granted a new trial as the defendant could not be convicted under the circumstances of an assault with intent to murder.

Appeal from the District Court of Bowie. Tried below before Hon. P. A. Turner.

Appeal from a conviction of assault with intent to murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—A conviction ought not to be allowed to stand if made by a party on a plea of guilty, who is totally ignorant of his legal rights in a court of justice, and how to protect them on the trial of a case in court. Ford v. State, 53 S. W. Rep., 869; Roy v. State, 24 Texas Crim. App., 369; Pickens v. State, 13 id., 353; Speer v. State, 26 id., 173.

The law is mandatory in all felony cases that the trial judge must submit a written charge to the jury upon all issues raised by the testimony whether the evidence be strong or weak.

The court gave a written charge in this cause, but said charge was not full enough, and did not, as required by law, submit to the jury the law applicable to every phase of the case raised by the testimony. Art. 715, White's Annotated Texas Code Crim. Proc., Williams v. State, 18 Texas Crim. App., 409.

The evidence in this case clearly raises the issue of manslaughter, and this court has repeatedly held that where the issue is even suggested by the testimony it is the duty of the trial court to submit that phase to the jury by proper instructions, 29 App., 362. If death had resulted in the case at bar the defendant, in our judgment, would not have been guilty of any higher grade of offense than manslaughter, and as death did not result he could only be convicted in this case for an aggravated assault; and the rule established by this court is clearly fixed that where the testimony even suggests the offense of an aggravated assault the trial court should give the same in its charge to the jury. Goode v. State, 32 Texas Crim. Rep., 505; Slaughter v. State, 34 Texas Crim. Rep., 81; Blackwell v. State, 33 Texas Crim. Rep., 278; Beaty v. State, 30 Texas Crim. App., 677; McGee v. State, 21 Texas Crim. App., 670; Bracken v. State, 29 Texas Crim. App., 362; Reynolds v. State, 8 Texas Crim. App., 412; Morales v. State, 36 Texas Crim. Rep., 234; Richardson v. State, 9 Texas Crim. App., 612.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of ten years; hence this appeal.

Appellant's contention is that, although he entered a plea of guilty to the indictment and the evidence thereon was heard by the court, that on account of the circumstances attending said plea, and because the court failed to charge on aggravated assault he should have been granted a new trial. He reinforces this idea by showing, in connection with his motion for new trial, by affidavits appended thereto, that there is a strong probability that he is not guilty of an assault with intent to murder, and on another trial the jury would not be authorized to find him guilty of said charge. By appellant's own affidavit, which in the motion does not appear to be controverted, it is shown that, after the alleged commission of the offense, and when he was arrested and brought before an examining court, he secured the services of W. P. Mahaffey, Esq., an attorney, to represent him; that said Mahaffey did represent him before the magistrate, waived an examination, and appellant was remanded to jail, with his bail fixed at $1,000, which he was unable to give; that he understood and believed that said attorney would continue to represent him. After he was indicted and at the succeeding term of the district court he gave said attorney the names of his witnesses whom he desired summoned; that being in jail he relied on his attorney to represent him, and did not know when his case would be called. The criminal docket was set down for trial on March 20, 1905, and that on the first day after taking up said docket, he was brought into court, and was asked by the judge whether he was ready for trial. He informed the judge that his attorney was not present, and the judge then informed him that the attorney W. P. Mahaffey, Esq., had informed the court he was not going to represent him on the trial of the case in the district court; that he was only employed to represent defendant on the trial in the justice court. Appellant alleges that this was the first information he had that said attorney was not going to represent him; that if he had known said attorney was not going to represent him he would and could have made arrangements with some other attorney to have represented him. After this he was called on to announce, and he stated his witnesses were not present, and the court asked him, if his witnesses had been summoned, and he stated to the court he did not know, that he supposed they had as his attorney, Mr. Mahaffey, was looking after the matter. The court then asked the clerk or sheriff if said witnesses had been summoned, and was informed that they had not. The court then told him that said witnesses had not been summoned, and that he would have to go to trial, as he ought to have had his witnesses summoned. Thereupon, defendant being ignorant of his rights in the premises, and being excited told the court, as he had no attorney and no witnesses, that he would just plead guilty, and put himself on the mercy of the court; that said trial then proceeded; that the indictment was read, and two witnesses were put upon the stand by the State. They testified against him, but not knowing his rights he did not ask them any questions. It was further shown in the motion that the case was not

fully developed by the State; but it is insisted that sufficient facts were developed to have required of the court a charge on aggravated assault. In order to present this matter clearly, we will state substantially the testimony adduced on the trial and contained in the affidavits appended to appellant's motion. Witness D. D. Cannon stated that, on Christmas Day, 1904, he was conductor on the road between Texarkana and Waco, and was running a passenger train on the Cotton Belt Railroad; that he left Texarkana on that day, and some four or five miles out he was informed by some of the trainmen that a darkey had shot his pistol on the train. He was in the chair car at the time, and went ahead through the next car, and out on the vestibule or platform in rear of the baggage coach, saw some darkies. He asked, who was doing that shooting, and none of them replied. He asked the darkey standing by appellant, and he motioned to him, and just as he did, he reached around and got hold of appellant's gun and took it from him. Appellant undertook to jump off but he held to him, and he and the brakeman and newsboy kept him from jumping off; that some one pulled the bell cord, and the train stopped. At that time they were standing on the steps, and appellant was trying to jump off. He did jump off and told witness to "give me my gun back, and I will walk to Redwater," which was the station where appellant was destined. At this time appellant was standing some ten feet from the steps. Witness gave the engineer a signal to go ahead, and just as he started the train, witness dropped the gun in front of the darkey, some ten or fifteen feet ahead of him. Appellant picked up the gun, and pulled down on witness. When he saw him levelling his gun down, witness jumped into the door and heard the shooting. It appeared to witness that appellant shot about three times. After the shooting, the newsboy gave him a bullet. He saw evidence or signs of where it struck in the vestibule. The bullet struck on the opposite side of where he was standing. The bullet struck a little iron casting, and glanced and hit two or three other places and then dropped down on the platform. With reference to where witness was standing the bullet could not have hardly passed there without hitting him, if he had been standing on the steps where he was when appellant levelled the gun; that he jumped back into the door to keep from being shot. J. S. Jones, another witness for the State, testified substantially, that he knew appellant; that he lived at Redwater, and witness also lived there; that some two hours after the train passed on, appellant came up, and he had a conversation with him. Appellant said, "I shot at that conductor, but I do not know whether I hit him or not." (Witness had previously heard of the shooting from the trainmen before appellant got there.) He then asked appellant, "Are you the negro that did the shooting?" And he said, 'Yes; but don't know whether I hit him or not. God damn him I tried to hit him." He further stated, "me and another negro were standing on the car taking a drink. He said, between the cars; and that the pistol slipped out of his pocket, and the conductor came back

there, and asked him who shot the gun, and he said he told him it was none of his business and the conductor grabbed him to put him off, and shoved him off the train, and when the train started he shot at him, and he shot at the engineer too." This was all the testimony adduced.

Appellant in connection with his motion for new trial appended a number of affidavits. Two white men who were on the train and knew him stated substantially, that they were on the rear car from where the shooting occurred, and that the negro did not fire the pistol until after they had passed the place where the negro was standing, and that the negro must have been one hundred and fifty or two hundred feet in rear of the baggage car when he fired the first shot; that he fired it parallel with the train. It is also shown that from the position where this shot was fired it would have been impossible to have hit the conductor on the vestibule of the baggage car. The affidavits of one or two of the negroes who were on the vestibule in rear of the baggage coach with appellant at the time of the occurrence, shows the accidental firing of the pistol when it slipped out of appellant's pocket, and that the ball struck on the south side of the coach, which was the bullet that the conductor testified about; that no bullet fired by appellant after he was off the train struck at that point.

It is contended by appellant that it was the duty of the court, on appellant's plea of guilty, that after the evidence had been adduced, to charge fully on every phase of the case presented by the evidence, that the court was not circumscribed or limited to appellant's plea of guilty to the indictment; that the indictment contained, besides an assault with intent to murder, subordinate degrees of the offense, and if there was any evidence tending to show any lesser degree than assault with intent to murder, the court should have charged it. We believe this contention is correct. The court in every felony case is required to give a written charge, and that charge must embrace every phase of the case as presented by the testimony. Here unquestionably, if appellant shot after he jumped off the train, or, as is testified by one witness, after he was shoved or put off the train by the conductor, and he had killed the conductor, he would have been entitled to a charge on manslaughter. The conductor had no right to put him off the train because his pistol had slipped from his pocket and accidentally fired, appellant having paid his fare to Redwater, the point of his destination, and in doing so was guilty of an assault. If appellant on account of this became excited and was rendered incapable of cool reflection, and under such circumstances shot and killed the prosecutor, he might be guilty of no higher offense than manslaughter, and consequently, where he did not kill the conductor, he was entitled to a charge on aggravated assault. But more than this, it occurs to us that appellant, ignorant as he was of his rights, had a right to believe that the attorney employed by him would represent him in the district court. He swears that after the court begun, and after this indictment,

he gave this attorney the names of his witnesses to have summoned; and this is not controverted by the attorney or any other witness. The attorney, it seems had done him no service in the justice court and under the circumstances, when he was informed by the court for the first time that said attorney had informed the court he would not represent him, and appellant's witnesses were not there, the court should have afforded appellant an opportunity either to employ other counsel, or at any rate to have given appellant an opportunity to have his witnesses present. Of course, if appellant had no defense to the action or refusal of the court to grant a new trial, he could not complain of injury. But here, as we understand it, the affidavits show a good defense to the State's case, and these are not controverted by the State. Nor do we understand that the testimony of the State's witness Cannon, who was an eye-witness to the transaction, when his evidence is analyzed, antagonizes that shown by the affidavits accompanying appellant's motion. These affidavits show that it was impossible, from where appellant stood when he fired the shots for him to have shot or hit the prosecutor. Prosecutor says he jumped in the door as soon as appellant levelled the pistol, and that the train was moving on and he heard the shots but did not even see them. The affidavits of the witnesses accompanying the motion for new trial show that these shots were fired, not directly at the train but parallel with the train, and after the car where prosecutor was, had passed on from one hundred and fifty to two hundred feet. If it was impossible for appellant to have reached the prosecutor or to have made an assault on him, by the means used, then he could not be convicted of an assault with intent to murder. Taking all the circumstances of this case together, we believe that the court erred in refusing to grant appellant a new trial. The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*