## WILLIAM JACKSON v. THE STATE.

### No. 4115. Decided October 28, 1908.

#### 1.—Assault to Murder—Malice Express and Implied.

The offense of assault with intent to murder is and can be supported by either express or implied malice, and if the defendant had implied malice towards the assaulted party he would be guilty of assault with intent to murder; and this although the parties were not acquainted prior to the time of the alleged assault.

#### 2.—Same—Charge of Court—Aggravated Assault—Burden of Proof.

Where upon trial for assault to murder the court submitted the approved form of a charge on aggravated assault as applied to the facts in the case, and which did not shift the burden of proof as claimed by the defendant, there was no error.

#### 3.—Same—Charge of Court—Burden of Proof.

Where upon trial of assault with intent to murder there was some evidence that the defendant was not in shooting distance of the party alleged to have been assaulted, the court properly charged that if the jury had reasonable doubt that the defendant was too far from the party assaulted that the ball would not reach him, to acquit the defendant, this did not shift the burden, and there was no error.

#### 4.—Same—Charge of Court—Burden of Proof.

Where upon trial of assault with intent to murder the evidence showed that the defendant fired a pistol at the assaulted party, the court properly charged that if the jury had a reasonable doubt that defendant shot said pistol with no intention to hit or shoot said assaulted party to acquit, this did not shift the burden, and there was no error.

Appeal from the District Court of Bowie. Tried below before the Honorable P. A. Turner.

Appeal from a conviction of assault with intent to murder; penalty two years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—On question of insufficiency of evidence: Reyes v. State, 48 Texas Crim. Rep., 346, 88 S. W. Rep., 245; Chatman v. State, 40 Texas Crim. Rep., 272; Childs v. State, 35 Texas Crim. Rep., 573; Carter v. State, 28 Texas Crim. App., 355; Stevens v. State, 38 Texas Crim. Rep., 550; Walker v. State, 7 Texas Crim. App., 627; Dixon v. State, 51 Texas Crim. Rep., 555, 103 S. W. Rep., 399.—On question of burden of proof: Rockhold v. State, 16 Texas Crim. App., 577; Pitts v. State, 29 Texas Crim. App., 374; Stewart v. State, 51 Texas Crim. App., 223, 19 Texas Ct. Rep., 163; Bagley v. State, 103 S. W. Rep., 874; Stacey v. State, 110 S. W. Rep., 901; Terrell v. State, 111 S. W. Rep., 152; Melton v. State, 47 Texas Crim. Rep., 451, 11 Texas Ct. Rep., 744.

On insufficiency of evidence; Stevens v. State, 38 Texas Crim. Rep., 550; McCullough v. State, 24 Texas Crim. App., 128; Harmons v. State, 29 Texas Crim. App., 445.

*F. J. McCord*, Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of assault to murder, and his punishment assessed at two years confinement in the penitentiary.

See former opinion 48 Texas Crim. Rep., 373, 88 S. W. 239. The facts, in substance, show that appellant, quite intoxicated, bought a ticket at Texarkana and boarded the south-bound train. After being on the train sometime he went into the vestibule of the car occupied by negroes, and a pistol in possession of appellant was discharged. The conductor Cannon, being informed of said fact, went to where appellant was, and this, in substance, is a statement of what occurred then: "The defendant was in the vestibule between the baggage car and the coach with another darkey, with whom he was talking when I walked up. He did not have anything in his hand. I saw his pistol in his pocket or scabbard I asked him who was doing the shooting. He made no reply, but he reached down here (indicating) and when he did that, I grabbed the pistol; also got him in the collar. I took the gun away from him, and he tried to jump off the train. The train was running 40 or 45 miles an hour, and I held the gun in one hand and the defendant in the other, and he pulled me clear down the steps. I stood on the steps and held him there until assistance could come. Told them to pull the cord and stop the train. I held him until the train stopped and turned him loose and he got off; the train was standing still then, and he said, 'Boss, give me my gun and I'll walk into town.' I didn't say a word, just reached out with the gun and give the engineer a signal to go, and as I did so I threw the gun in front, some 8 feet in front; as the gun left my hands, he reached for the gun, and raised it and presented it at me, and I jumped back inside the door just as he shot. He was standing not over four feet from the train when he said, 'Boss, give me my gun, and I'll walk into town.' I had no words with him at all. I give the signal to the engineer to pull out, and just as the train went to move I threw the gun in the direction the train was going, and as the gun left my hands defendant jumped to get it. I saw him pick it up. I was 8 or 10 feet from him when he picked it up. I was in the vestibule right on the steps. When he grabbed the gun he leveled down at me. I thought he was going to shoot, and I jumped back in the east door. I jumped back in to keep from being shot. Just as I jumped back in I heard the report of a gun—I think two or three shots. He was not over 8 or 10 feet from me when he fired. I just had jumped back into the door. This occurred in Bowie County. The shot struck in the vestibule. There were three places struck in the vestibule, I do not know whether made by one or more bullets. But I only found one bullet. The bullets made three impressions. One struck the platform, and glanced and hit in three places, just about

on a level. It did not hit the steps. It hit inside." The State's testimony further shows that before appellant got on the train at Texarkana defendant was heard to say to another negro to come and get on the train and go to Redwater with him, and the negro replied that he did not have any money, and the defendant said, "Come and get on anyway. I will see that you go, as I have something here that will not let any man put me off the train," and defendant showed the witness a pistol. This was sometime before the train left, and the defendant was drunk and talking big among the negroes. The testimony for the defense shows that the pistol was accidently discharged and struck different parts of the vestibule of the train, and, furthermore, the defendant did not shoot the pistol until the train had gone some distance from the place where the conductor had let him off. This is, in substance, the evidence.

Appellant insists in his motion for a new trial that the verdict of the jury is contrary to and not supported by the evidence. We do not agree with this contention. Assault to murder is and can be supported by either express or implied malice. Certainly, the jury were warranted in believing the State's case that, at least, the defendant had implied malice towards the conductor. It is true they were not acquainted prior to the time of this trouble, but that does not prevent the jury holding that, actuated by passion and without adequate cause, he shot at the conductor. The State's case shows that he got off the train voluntarily, while the defense shows that he was assaulted by the conductor and put off. The court presented this phase of the matter properly in his charge, as we will show in another portion of the opinion.

Appellant complains that the court erred in giving the following charge: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, in the County of Bowie and State of Texas, on or about the time charged in the indictment, with a deadly weapon, did unlawfully assault the said D. D. Cannon as charged, but you further believe at the time of making such assault the defendant's mind was under the influence of sudden passion, known as anger, rage, resentment or terror, sufficient to render it incapable of cool reflection, and that this condition of mind was produced by an adequate cause, then you will find the defendant guilty of an aggravated assault." Appellant says this charge was erroneous, because same places upon the defendant the burden of proving facts which would reduce the character of the assault from an assault to murder to an aggravated assault, and requires the jury to find these facts beyond a reasonable doubt before they could convict him of an aggravated assault, when, under the law, the defendant was entitled to the benefit of such doubt. This criticism is not correct. It does not shift the burden of proof, but is a stereotyped charge that has been approved by this court.

The third complaint is that the court erred in charging the jury,

as follows: "If you believe from the evidence that the defendant shot a pistol at D. D. Cannon, but you further believe, or have a reasonable doubt, that he was so far from said Cannon that the ball would not reach him, then this would not be an assault, and you will find the defendant not guilty." This charge is correct. Appellant insists, however, that the burden was upon the State to show that at the time defendant fired said shot he was close enough to said Cannon to be in carrying distance of said pistol; and said charge shifted the burden upon the defendant to prove the contrary. We hold that appellant is in error in his contention. The charge very properly, in substance, tells the jury that if they have a reasonable doubt as to whether he was close enough to shoot him, to find defendant not guilty.

The fourth complaint is leveled at the following charge: "I also charge you that if you believe, or have a reasonable doubt, that defendant shot said pistol with no intention to hit or shoot said D. D. Cannon, then you will find the defendant not guilty." This charge is correct, and does not .shift the burden of proof as contended by appellant. Similar criticisms are leveled at other charges of the court. We do not deem it necessary to copy all of them, but suffice it to say, the charge of the court is a proper presentation of the law applicable to the facts of this case, and we hold that the evidence amply supports the verdict.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Ramsey, Judge, absent.

[Motion for rehearing overruled.—Reporter.]